STATE OF CONNECTICUT *v.* MACEO TROY STREATER
(13079)

O'CONNELL, HEIMAN and SCHALLER, Js.

Argued September 19—decision released December 13, 1994

*John R. Williams,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael A. Pepper,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a[2] and carrying a pistol without a permit in violation of Gen-

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

eral Statutes § 29-35.[3] The defendant claims that the trial court improperly (1) denied the defendant his constitutional right to confront his accusers, (2) charged the jury that it could draw an adverse inference from the defendant's failure to call a particular witness, (3) charged the jury regarding "consciousness of guilt," and (4) denied the defendant's motion to suppress out-of-court identification testimony tainted by unnecessarily suggestive procedures. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Terrance Gamble, was riding a bicycle in the area of Munson and Dixwell Avenues in New Haven at approximately 9 p.m. on May 8, 1990. The victim was with Donnie Andrews and Teverace Bellamy when they encountered an acquaintance, Joseph Preston. Preston and the victim separated from the others and rode their bicycles up Shelton Avenue.

Four young African-American males, including the defendant, approached the victim on foot. An argument ensued between the victim and the defendant, while Preston stood fifteen to twenty feet away. Preston recognized the defendant and noted that he was wearing a white shirt and black pants. The argument between the victim and the defendant continued and, at a time that Preston was looking the other way, Preston heard gunshots. When Preston turned, he saw the defendant standing in the middle of the street shooting at the victim. The victim died as a result of his injuries.

The New Haven police were notified. Detective Joseph Howard observed the body of the victim lying

---

[3] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . .

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

in the street. Howard overheard some onlookers comment that the people responsible for the shooting had fled down Argyle Street toward Dixwell Avenue. While Howard was canvassing the neighborhood for possible witnesses, Carol Cheek motioned him to the rear of a building, and provided him with information that led him to check outside the defendant's home for a faded red compact car.

Detectives Anthony DiLullo and John Greene were also dispatched to the shooting scene and arrived at about 9:25 p.m. Howard called DiLullo and Greene over to his car to meet Cheek. Cheek told the officers that earlier in the evening she had heard gunshots and had seen four young African-American men running from the area where she had heard the shots. The men entered a faded red or maroon automobile parked on Dixwell Avenue. Cheek identified the defendant as one of the men she had seen running. He lived across the street from her, and she had known him for about twenty years. Cheek also told the officers she had seen the defendant with the maroon automobile on other occasions, and that it was normally parked outside his house on Dixwell Avenue.

Later that evening, Howard observed a faded Buick Skyhawk in front of the defendant's house. The next evening, at about 11 p.m., Howard stopped the Skyhawk after the defendant and another man entered the vehicle and began to drive away. Howard arrested the defendant, not for the shooting, but on unrelated pending warrants.

Preston was contacted by the police several days later regarding the shooting. He reviewed a tray of photographs of African-American males and selected the defendant's photograph as that of the person who had shot the victim.

On May 10, 1990, DiLullo and Greene tape-recorded a statement from Cheek at her apartment. On May 16,

Cheek met with the detectives to read and review her statement. She read and corrected her statement, initialed each correction and signed the last page.

At trial, Cheek testified that she did not remember being outside her house on May 8. She also stated that she did not approach Howard that night, that she did not recall whether she gave the police a taped statement on May 10, and that looking at the transcript of the statement did not help because she could not read. She acknowledged that the signature on the statement was hers, although she did not remember signing it. Cheek listened to the tape recording of the statement, but denied that the voice was hers.

On cross-examination, Cheek said that two officers were putting pressure on her to provide information about the shooting. On redirect examination, although Cheek said she had no recollection of the events of May 8, she did recall trying to get herself and her children out of the way of gunshots.[4]

At trial, Andrews testified that minutes before the shooting he had seen the defendant with three African-American men in a maroon car. After the victim left, Andrews began walking home when he heard gunshots. He and Bellamy went back to Shelton Avenue, arriving shortly before the police. At about 3 a.m. on May 9, Andrews gave a taped statement to

---

[4] The defendant's first trial on the same two counts ended in a mistrial. At the first trial, Cheek's statement was admitted as a full exhibit and was read to the jury. In the statement, Cheek said that on May 8, at about 10 p.m., she had heard gunshots and had seen the defendant and three people she did not know run to a car parked in front of the laundromat. The defendant was wearing black pants and a white shirt. The car was an older, burgundy model. She recognized the defendant because she had known him for twenty years.

Cheek testified that the police were "chasing after her" following the incident, and that Detective Green had come to her house several times. She also said that he had stopped the tape several times during her statement to tell her what to say, and that the statement was not true.

the police. He selected the defendant's photograph from a tray of about 150 photographs of African-American men as that of the person he had seen arguing with the victim.

The defendant testified on his own behalf and raised an alibi defense. He testified that he did not recall all of his activities of May 8, but that, at some time after dark, he drove to First Calvary Baptist Church to look for his brother Chuck. He admitted that he was driving a cranberry Skyhawk. He did not recall the time he arrived at the church. While inside the church, the defendant saw Chuck, Randy Hodges, and the Reverend Boisy Kimber. The defendant knew Hodges, but he was not a friend. On cross-examination, the defendant said that Hodges was in jail at the time of trial.

## I

The defendant claims that, on three separate occasions, the trial court improperly denied the defendant his constitutional right to confront witnesses against him as guaranteed under the sixth amendment to the United States constitution[5] and article first, § 8, of the Connecticut constitution.[6] The court first refused to permit him to review Andrews' juvenile records. In the other two instances, the court prohibited cross-examination of Greene and DiLullo regarding alleged instances of misconduct in other unrelated prosecutions.

---

[5] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[6] Although the defendant has framed his claim under both the state and federal constitutions, he has not provided an independent analysis of our state constitutional provisions. In the absence of any such analysis by the defendant in this case, we confine our analysis to a discussion of his rights under the federal constitution. *State* v. *Pinnock,* 220 Conn. 765, 776 n.3, 601 A.2d 521 (1992); *Phillips* v. *Warden,* 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991). Our "declination, however, does not mean that we are not able to review [a state constitutional claim] if we choose to do so." *State* v. *Geisler,* 25 Conn. App. 282, 283–84 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

The following additional facts are necessary to resolve this claim. Prior to Andrews' testimony, the defendant sought permission to review Andrews' juvenile records. The trial court reviewed the records in camera and declined to disclose them to the defendant. The court stated that the records contained no adjudications, but did reflect both dismissed and pending juvenile cases. With regard to the dismissed cases, the court reviewed not only the files but also the underlying police reports. The court found that there was nothing in the records "that would be probative in the issue of truth or veracity."

The defendant claims that the denial of access to Andrews' juvenile records was erroneous because it prevented him from impeaching Andrews on the basis of bias and also from introducing prior acts of misconduct directly relevant to Andrews' credibility.

A

Andrews was twelve years old at the time of the shooting, and fifteen at the time of trial. His juvenile records were presumptively confidential pursuant to General Statutes § 46b-124. See *In re Sheldon G.*, 216 Conn. 563, 583 A.2d 112 (1990). Section 46b-124 (a) protects the confidentiality of "[a]ll records of cases of juvenile matters as defined in section 46b-121, or any part thereof, including studies and reports by probation officers, social agencies and clinics . . . ."[7]

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution 'to confront the witnesses against him.' " *State* v. *Lubesky,* 195 Conn. 475, 481, 488

[7] General Statutes § 46b-121 defines "[j]uvenile matters" to include not only delinquency proceedings, but also "all proceedings concerning uncared-for, neglected or dependent children," proceedings concerning the termination of parental rights, and matters concerning families with service needs.

A.2d 1239 (1985), quoting *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The primary interest secured by the confrontation clause of the sixth amendment is the right to cross-examination; *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); because cross-examination is the principal means by which the credibility of witnesses and the truth of their testimony is tested. *State* v. *Randolph,* 190 Conn. 576, 591, 462 A.2d 1011 (1983); *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982). Cross-examination concerning "motive, interest, bias or prejudice . . . is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Lewis,* 220 Conn. 602, 621, 600 A.2d 1330 (1991). "Our cases have consistently recognized the right of an accused, during cross-examination, to place before the jury the fact that criminal charges are pending against the state's witnesses." *State* v. *Ortiz,* 198 Conn. 220, 223, 502 A.2d 400 (1985); *State* v. *Lubesky,* supra, 482; see also *State* v. *George,* 194 Conn. 361, 365, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *Wilson,* supra, 720; *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979); *State* v. *Annunziato,* 174 Conn. 376, 380, 387 A.2d 566 (1978). The denial or undue restriction of the right to confrontation constitutes constitutional error. *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Ouellette,* 190 Conn. 84, 101, 459 A.2d 1005 (1983).

In *Davis* v. *Alaska,* supra, 415 U.S. 308, the Supreme Court of the United States found that, in some circumstances, a defendant's sixth amendment right to impeach a witness will prevail over the confidentiality of juvenile information. See, e.g., *State* v. *Ortiz,* 198 Conn. 220, 502 A.2d 400 (1985). *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40

(1987), however, which clarified the *Davis* decision, is controlling in this matter. *Ritchie,* like this case, involved a defendant's attempt to gain access to a child's records, the confidentiality of which were protected by state law. The trial court in *Ritchie* reviewed the records in camera and denied the defendant's request. On appeal, the Supreme Court of the United States held that disclosure of the child's records was not required by the confrontation clause. "The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. . . . Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Pennsylvania* v. *Ritchie,* supra, 52–53.

In this case, the trial court reviewed the juvenile records in camera and provided the defendant with the information he needed to explore the issue of bias. The defendant was informed that there were pending juvenile cases against the witness and that there were no juvenile adjudications in the records. Further, the court allowed defense counsel to interview Andrews privately prior to his testimony. Despite these measures, the defendant never attempted to cross-examine Andrews regarding the pending matters or to impeach him concerning his bias or interest.

The trial court provided the defendant with the information regarding pending cases and did not restrict the defendant's cross-examination of Andrews. The defendant's confrontation clause rights were not infringed. In balancing the juvenile's right to confidentiality against the defendant's right to cross-examination, it is not necessary for a court to turn over the juvenile records to the defendant for examination. Id.

The trial court employed the procedure endorsed by the Supreme Court in *Ritchie* when it reviewed the records in camera, disclosed the results of the inspection and afforded appropriate cross-examination.

The defendant next argues that his access to the juvenile records was required to provide information regarding misconduct that might be useful to attack the witness' credibility. *Pennsylvania* v. *Ritchie,* supra, 480 U.S. 39, disposes of this issue as well. The Supreme Court of the United States concluded that a defendant's "interest (as well as that of the [state]) in ensuring a fair trial can be protected fully by requiring that the [confidential] files be submitted only to the trial court for in camera review." Id., 60. The confrontation clause is not violated by withholding the records.

In *State* v. *Harris,* 227 Conn. 751, 631 A.2d 309 (1993), our Supreme Court applied the *Ritchie* analysis to a claim that an in camera review by a trial court was insufficient to protect the defendant's right to confrontation. "Access to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Citations omitted; internal quotation marks omitted.) Id., 762; *State* v. *Storlazzi,* 191 Conn. 453, 459, 464 A.2d 829 (1983); *State* v. *Piskorski,* 177 Conn. 677, 737, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The defendant's rights were sufficiently protected by the trial court's initial screening of the confidential records.

After an in camera inspection, the trial court must determine whether the information in the records is

"probative of [the witness'] capacity to relate the truth or to observe, recollect and narrate relevant occurrences." *State* v. *Harris,* supra, 227 Conn. 767. If the court finds that the files do not contain any material that would be helpful to the defendant in those respects, the defendant's request for access to the confidential information should be denied. Id.

The trial court in this case properly followed this procedure. The court examined the records, disclosed the materials of probative value to the defendant, and maintained the confidentiality of information that was not significantly helpful to the defendant. The procedures employed by the trial court fully safeguarded the defendant's confrontation rights. We conclude that there was no abuse of discretion by the trial court in withholding Andrews' juvenile records from the defendant.

B

The defendant next claims that the trial court improperly restricted the defendant's cross-examination of Greene and DiLullo in violation of his right to confrontation. We do not agree.

The following additional facts are necessary to resolve this issue. Greene testified regarding his May 8 interview of Cheek, and the taking of her statement two days later. On cross-examination, the defendant sought to voir dire Greene regarding the possible existence of police department or prosecution memos concerning Greene's intimidation or threatening of witnesses in other cases. The defendant indicated that he wanted to offer prior bad acts evidence to show that Greene had a propensity for such conduct, and could have used intimidation in his questioning of Cheek.

The court did not allow that line of questioning by the defendant. The court determined it to be irrelevant

and stated that, even if such memos did exist, such an inquiry would not be permitted. The defendant, however, cross-examined Greene at length regarding his interviews with Cheek.

DiLullo was recalled by the state and questioned regarding the circumstances surrounding the taking of Cheek's statement. The defendant argued, outside the presence of the jury, that DiLullo was the defendant in three pending federal civil rights actions that included allegations of coercion and intimidation. The defendant offered the evidence as probative of bias, interest or motive under *Davis* v. *Alaska,* supra, 415 U.S. 308. The trial court sustained the state's objection and excluded the evidence.

Cross-examination concerning "motive, interest, bias or prejudice . . . is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Lewis,* supra, 220 Conn. 621. "The denial or undue restriction of the right to confrontation constitutes constitutional error." *State* v. *Lee,* 229 Conn. 60, 70, 640 A.2d 553 (1994); see also *Davis* v. *Alaska,* supra, 415 U.S. 318. However, "[i]t does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State* v. *Lee,* supra, 70. "Thus, the confrontation right is 'not absolute and is subject to reasonable limitation.' " *State* v. *Lee,* supra, 70–71, quoting *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Santiago,* 224 Conn. 325, 331, 618 A.2d 32 (1992); *State* v. *Moye,* 214 Conn. 89, 94, 570 A.2d 209 (1990).

In this case, the defendant was afforded sufficient latitude in cross-examination of the detectives to comply with the confrontation clause requirements. The defendant questioned Greene about any allegations of past misconduct, attempting to impugn his reliability in the eyes of the jury and to elevate the credibility of Cheek's version of the events following the shooting. This line of questioning, in conjunction with the testimony of Cheek, gave the defendant ample opportunity to present the issue of credibility to the jury. The questioning regarding the memos was properly determined to be irrelevant as it did not illuminate past disciplinary proceedings or complaints against Greene, but raised only the possible existence of internal memos questioning his conduct in earlier, unrelated cases.

The limitation on the cross-examination of DiLullo also was not improper. The defendant sought to introduce evidence of pending civil rights actions, not on the issue of general credibility, but under the reasoning of *Davis* v. *Alaska,* supra, 415 U.S. 308, to show bias on the part of DiLullo. "[A]s a general rule cross-examination of the prosecuting witness should be allowed to show the pendency, existence and status of civil action against the accused arising out of the same set of circumstances as those which served as the basis for the criminal prosecution." (Internal quotation marks omitted.) *State* v. *Milum,* 197 Conn. 602, 610,

500 A.2d 555 (1985). In this case, the pending civil actions against DiLullo did not involve the defendant, nor did they demonstrate any bias the witness might have toward the defendant.

In *State* v. *Moore*, 23 Conn. App. 479, 486–87, 581 A.2d 1071 (1990), cert. denied, 217 Conn. 802, 583 A.2d 132 (1991), we upheld the trial court's determination that it need not inspect a police officer's personnel records based on an allegation that the officer was once named a party in a civil suit brought by other parties, arising from a separate matter. By analogy, we conclude that, in this case, "there was an insufficient nexus between the information requested and the case at hand"; id., 487; and, therefore, the trial court did not abuse its discretion in denying the defendant's request.

## II

The defendant next claims that the trial court improperly instructed the jury that it could draw an adverse inference from the defendant's failure to call Randy Hodges as a witness. We do not agree.

The defendant's primary defense at trial was alibi. He testified that he stopped at First Calvary Baptist Church sometime after dark on May 8, and saw his brother Chuck, the Reverend Boisy Kimber, and Randy Hodges. Both his brother and Kimber testified at trial that they had seen the defendant at the church on May 8.

Hodges was on the defendant's original list of possible alibi witnesses. At the time of trial, Hodges was in state custody in connection with an unrelated crime. The defendant did not call Hodges as an alibi witness at trial. The court, over the defendant's objection, instructed the jury that it could draw an adverse infer-

ence from the defendant's failure to call Hodges as a defense witness.[8]

The defendant failed to preserve this issue at trial for appellate review. Practice Book § 852 provides in pertinent part that "[t]he [appellate] court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury." See *State* v. *Ulen,* 31 Conn. App. 20, 36, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). Our Supreme Court has found that "[t]he failure of the defendant to state distinctly the matter being objected to immediately after the conclusion of the charge ordinarily renders the claim of error unreviewable on appeal." *State* v. *Utz,* 201 Conn. 190, 208, 513 A.2d 1191 (1986). Practice Book § 4185 provides in relevant part that we are not "bound to consider a claim unless it was distinctly raised at the trial. . . ." We have noted that "[t]he purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction." *State* v. *Utz,* supra, 207.

The defendant took an exception to the giving of the adverse inference instruction, but gave no reason or basis for his exception. We find that this claim was not distinctly raised at the trial and, therefore, does not merit review by this court.[9] *State* v. *Ulen,* supra, 31

---

[8] See *Secondino* v. *New Haven,* 147 Conn. 672, 675, 165 A.2d 598 (1960).

[9] We also note that this claim does not merit review under the *Golding* criteria. See *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We have held that issues involving the propriety of a *Secondino* instruction do not

Conn. App. 36. We will not review this unarticulated, unpreserved claim. See *Voll* v. *Lafayette Bank & Trust Co.*, 223 Conn. 419, 435, 613 A.2d 266 (1992).

## III

The defendant next claims that the trial court improperly instructed the jury on consciousness of guilt. He asserts that evidence of the defendant's flight from the scene is not a sufficient basis for a consciousness of guilt jury instruction. We do not agree.

The jury was instructed that the evidence of the defendant's flight from the scene of the shooting could be considered as tending to show consciousness of guilt. The court also instructed the jury that the defendant claimed not to have been at the scene and, if the state failed to prove that the defendant was present and committed the crime, he must be found not guilty. The jury was also instructed that although it was permitted to draw an inference of consciousness of guilt from the defendant's flight it was not required to do so.

This claim was not preserved properly for appellate review. In order for this court to review a claim involving the giving of, or the failure to give, an instruction, a party must either make a written request to charge or take an exception immediately after the charge is given. Practice Book § 852. If the party chooses to take an exception, the party must "state distinctly the matter objected to and the ground of objection." Id.; see also *State* v. *Ulen,* supra, 31 Conn. App. 36. Once an exception is taken and the ground stated, a party is limited on appeal to raising that claim on the same basis as stated at trial. See Practice Book § 4185.

rise to the level of a constitutional challenge. See *State* v. *Hudson,* 14 Conn. App. 463, 470, 541 A.2d 534, cert. denied, 209 Conn. 803, 548 A.2d 439 (1988).

The defendant took an exception to the trial court's instruction as to consciousness of guilt. The defendant, however, gave no basis for his exception. By failing to give his reasons for excepting to the trial court's instruction, the defendant failed to preserve this issue for appeal.[10]

## IV

The defendant claims, finally, that the trial court improperly admitted into evidence the out-of-court identification of the defendant by Cheek. We do not agree.

The following additional facts are necessary to dispose of this claim. Cheek told police on May 8 and 10 that she saw the defendant running from the scene of the shooting. She had known the defendant for about twenty years and was his neighbor. On May 10, 1990, she identified a photograph of the defendant as the person whom she knew as Troy Streater.

At the defendant's first trial, he had moved to suppress the pretrial identification and any in-court identification on the ground that the identification procedures were impermissibly suggestive. The motion was denied by the court after an evidentiary hearing.

At that evidentiary hearing, Cheek testified that on May 10, police detectives had come to see her at her home. She told them that she had heard gunshots on May 8, and that she had seen a lot of people running. She also told them that, after the gunshots, she had seen the defendant running with the other people. The officers showed her three or four black and white pho-

---

[10] This claim also fails to merit review under *Golding*. See *State v. Golding*, supra, 213 Conn. 239–40. The defendant does not claim that the consciousness of guilt instruction denied him any state or federal constitutional right. The claim is one involving instructional error; *State v. Smith,* 219 Conn. 160, 165–66, 592 A.2d 382 (1991); *State v. Carter,* 34 Conn. App. 58, 90, 640 A.2d 610, cert. granted, 229 Conn. 919, 644 A.2d 915 (1994); and does not warrant review under *Golding*.

tographs, all the same size, and she identified a picture of the defendant as that of Troy Streater. Cheek signed the photograph. Cheek also testified that she had spoken to one officer on the night of the shooting, and had told him that she had not seen anything. The trial court concluded that the identification was not unnecessarily suggestive and denied the motion to suppress.

"The due process clause of the fourteenth amendment to the United States constitution requires the exclusion of identification evidence—including, as here, an in-court identification and testimony concerning a pretrial photographic identification—when the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Biggs,* 13 Conn. App. 12, 17, 534 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 73 (1988).

"To determine whether a pretrial identification procedure . . . violated a defendant's due process rights, 'the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the "totality of the circumstances." ' " *State* v. *Howard,* 221 Conn. 447, 453, 604 A.2d 1294 (1992), quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980).

To determine whether an identification that resulted from an unduly suggestive procedure is nevertheless reliable, we must weigh the corrupting effect of the suggestive procedure in light of certain factors such as "the opportunity of the witness to view the criminal at the

time of the crime, the witness' degree of attention, the accuracy of [that person's] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (Internal quotation marks omitted.) *State* v. *Theriault,* supra, 182 Conn. 373–74; *State* v. *Lago,* 28 Conn. App. 9, 18, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992).

The defendant, as the one seeking to suppress identification evidence, bears the initial burden of proving that the identification resulted from an unconstitutional procedure. *State* v. *Payne,* 219 Conn. 93, 106, 591 A.2d 1246 (1991); *State* v. *Johnson,* 28 Conn. App. 645, 649, 612 A.2d 799, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). We conclude that the defendant has failed to establish that the photographic array was impermissibly suggestive. See *State* v. *Hamele,* 188 Conn. 372, 377–78, 449 A.2d 1020 (1982). In light of this conclusion, we need not address the reliability of the out-of-court identification. *State* v. *Outlaw,* 216 Conn. 492, 503, 582 A.2d 751 (1990); *State* v. *Holliman,* 214 Conn. 38, 49, 570 A.2d 680 (1990). Accordingly, the trial court did not abuse its discretion in admitting evidence of the pretrial photographic identification.

The judgment is affirmed.

In this opinion the other judges concurred.