STATE OF CONNECTICUT *v.* MITCHELL HENDERSON
(13264)

O'CONNELL, HEIMAN and SCHALLER, Js.

Argued February 7—decision released May 9, 1995

*James P. Ray,* special public defender, with whom, on the brief, was *Craig A. Raabe,* special public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Carl E. Taylor,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[1] attempt to escape from custody in violation of General Statutes §§ 53a-171, 53a-168 (2)[2] and 53a-49, assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[3] and threatening in violation of General Statutes § 53a-62 (a) (1).[4] The defendant pleaded guilty to criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1) (A). The defendant also pleaded guilty to being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) and to being a persistent serious felony offender in violation of General Statutes § 53a-40 (b) and (g).

The defendant claims that (1) the trial court improperly denied his motion to suppress out-of-court identification testimony, (2) the state presented insufficient

---

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes § 53a-171 provides in pertinent part: "(a) A person is guilty of escape from custody if he escapes from custody."

General Statutes § 53a-168 provides in relevant part: "(2) 'Custody' means restraint by a public servant pursuant to an arrest or court order . . . ."

[3] General Statutes § 53a-61 provides in relevant part: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[4] General Statutes § 53a-62 provides in relevant part: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

evidence of physical injury to the victim to support the conviction of assault in the third degree, (3) the state failed to prove that he was in custody for purposes of the attempt to escape charge, (4) he was denied a fair trial by the state's charging him with assault in the third degree without a good faith basis, giving the jury an opportunity to reach a compromise verdict, and (5) the trial court improperly denied his motion for a new trial based on his claim of ineffective assistance of counsel. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of January 17, 1992, the victim, Victorene Hazel, and her companion, Codella Webley, crossed Baltimore Street in Hartford after leaving the Shawmut Bank. When the two women reached the corner of Baltimore Street and Homestead Avenue, they were approached by the defendant who demanded that Hazel hand over her purse to him. The defendant was standing in front of Hazel, at a distance of one and one-half to two feet. Her view of the defendant was clear and unobstructed. After Hazel refused to turn over her purse, the defendant pulled out a knife, grabbed her by the shirt and hit her. When he grabbed Hazel, who had a heart condition, she experienced pain in her chest. The defendant threatened to kill her if she did not give him the purse. When he swung the knife, she freed herself from his grasp and ran in the direction of the Shawmut Bank with the defendant chasing her. Hazel's purse fell off her shoulder as she was running and the defendant picked it up. Hazel entered the bank screaming that she had been robbed and needed help. When Webley reached the bank, she noticed that Hazel was breathing heavily, holding her chest and saying, "My heart, my heart."

At approximately the same time, Howard Fraser and his cousin, Earl Forrest, were driving on Homestead Avenue when they stopped to look up a telephone num-

ber. As Forrest was looking for the number, Fraser noticed from a distance of five to seven yards the victim struggling with her assailant. As he and Forrest were about to drive off, he saw the defendant grab the purse from Hazel. When the victim began to scream, Fraser realized that she was being robbed. Fraser watched the defendant run up Baltimore Street and enter onto private residential property. Fraser realized that the defendant would have to exit on Kent Street, the street parallel to Baltimore Street. Fraser and Forrest drove to Kent Street in anticipation of seeing the defendant. They saw him running down Kent Street toward Albany Avenue with a purse under one arm. Fraser opened the passenger door as they drove up next to the defendant. Forrest told the defendant that they were the police and ordered him not to move. Fraser then jumped out the passenger door and grabbed the defendant. When the defendant resisted, Forrest joined Fraser in an attempt to subdue the defendant. Both Fraser and Forrest repeatedly called for help as they were struggling with the defendant. The defendant struck Fraser during the struggle, and Fraser suffered a wrist injury from striking the defendant.

Officer Douglas Frederick of the Hartford police department arrived approximately five minutes after the struggle had begun and saw the defendant holding the victim's purse. While the defendant was struggling with Forrest and Fraser, the victim's purse fell and its contents scattered onto the street. Frederick's attempt to handcuff the defendant was unsuccessful because he continued to resist fiercely. Frederick radioed for assistance and, finally, with the help of other police officers, managed to get the defendant into the police cruiser. Frederick then informed the defendant that he was under arrest.

At trial, Fraser identified the defendant in court as the man he had caught running down Kent Street with the victim's purse and who had earlier robbed Hazel on Homestead Avenue.

After Hazel and Webley left the bank, a man in a truck informed them that the robber had been apprehended on Kent Street. The man drove both women to Kent Street. After getting out of the truck, Hazel and Webley saw the defendant sitting in the police cruiser. Frederick had put the victim's purse on top of the cruiser for safekeeping while he was trying to restrain the defendant. Frederick noticed two women running down Kent Street toward his cruiser and he heard Hazel yelling, "That's him, he robbed me." Frederick asked both Hazel and Webley to make sure that the man in the cruiser was indeed the robber. Without any difficulty, both women positively identified the defendant as the robber. The weather was clear and there was adequate sunlight to enable the women to make the identification. Although Frederick was able to recover the purse, his search of the defendant did not produce a knife.

After telling the defendant that he was under arrest and placing him in the police cruiser, Frederick transported him from the scene. The defendant yelled obscenities and threatened to kill the officer. As Frederick drove down Kent Street toward Albany Avenue, the defendant became increasingly violent. The defendant kicked out the rear window of the cruiser and attempted to climb out while the cruiser was in motion. The defendant was able to get his upper torso out of the rear window. Frederick stopped the car and radioed for assistance and an ambulance. Frederick then pulled the defendant out of the cruiser and sat on him until help arrived. When the ambulance arrived, the defendant was put in a body bag and transported to

St. Francis Hospital. The defendant was treated for several cuts he had sustained while attempting to climb out of the rear window of the cruiser.

The defendant was convicted by a jury of four counts including robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). After the verdict, the defendant moved for a judgment of acquittal and a new trial, which the trial court denied.

## I

The defendant claims that the trial court violated his right to due process guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution by improperly denying his motion to suppress the out-of-court identification by the victim, Hazel, and her friend, Webley, when the identification procedure was unnecessarily suggestive and unreliable.[5]

The fourteenth amendment to the United States constitution guarantees that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." The purpose of the fourteenth amendment is to protect a person from " 'conduct that may be fairly characterized as "state action." ' " *State* v. *Holliman,* 214 Conn. 38, 43, 570 A.2d 680 (1990), quoting *Lugar* v. *Edmonson Oil Co.,* 457 U.S. 922, 924, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). " '[T]he Four-

---

[5] "Although the defendant has framed his claim under both the state and federal constitutions, he has not provided an independent analysis of our state constitutional provisions. In the absence of any such analysis by the defendant in this case, we confine our analysis to a discussion of his rights under the federal constitution. *State* v. *Pinnock,* 220 Conn. 765, 776 n.3, 601 A.2d 521 (1992); *Phillips* v. *Warden,* 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991). Our 'declination, however, does not mean that we are not able to review [a state constitutional claim] if we choose to do so.' *State* v. *Geisler,* 25 Conn. App. 282, 283–84 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992)." *State* v. *Streater,* 36 Conn. App. 345, 350 n.6, 650 A.2d 632 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195 (1995).

teenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities.' *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 837, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982)." *State* v. *Holliman*, supra, 43. "It is well established that conduct that may fairly be characterized as state action is a necessary predicate to a challenge under the due process clause of the fourteenth amendment to the United States constitution." Id., 45. The defendant has failed to demonstrate any state action that would trigger the protection of the due process clause of the fourteenth amendment. The trial court's decision not to suppress testimony of the victim and her companion's identification was therefore proper.

The one-on-one confrontation between the victim and the defendant was not arranged by the police. The victim's spontaneous identification of the defendant as the robber took place while she was running toward the police cruiser in which he was detained. See *State* v. *Villafane*, 171 Conn. 644, 657–58, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney*, 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984) (identification from spontaneous confrontation between witness and defendant that was not arranged by police did not violate defendant's due process rights). The police officer could not have known the whereabouts of the victim at the time he placed the defendant in the cruiser. Even though the victim and her companion had already identified the defendant as the robber, Frederick asked both women to confirm their identification by bringing them to the cruiser in which the defendant was seated. Both women had an unobstructed view of the defendant and again were able

to identify him as the robber. The defendant argues that the action of the police officer in placing the victim's purse on top of the cruiser amounted to state action and suggested to the victim that the person inside the cruiser must be the robber. The facts suggest, however, that the act of placing the purse on top of the cruiser by the police officer was not done to influence the victim's identification. The police officer did not know at the time the whereabouts of the victim and her companion. The officer testified that he put the purse on top of the cruiser so it would not get lost or damaged during the struggle with the defendant. Finally, the victim and her friend were informed by the truck driver, not the police, that the robber had been captured.[6]

The defendant relies on State v. Theriault, 182 Conn. 366, 438 A.2d 432 (1980), to show that the actions of the police officer in this case constituted state action and were unnecessarily suggestive. In Theriault, the police informed the witness that somebody had been arrested, and then showed the witness the gun used in the robbery. Id., 373. Moreover, the police then took the witness to identify the handcuffed defendant through a one way mirror. Id. In Theriault, the police not only arranged the show-up identification, but also tried to influence the witness' identification. Unlike the situation here, the conduct of the police in Theriault was in fact state action that violated the defendant's due process rights under the fourteenth amendment.[7]

---

[6] The defendant does not challenge the constitutionality of the out-of-court identification made by Fraser and his cousin, Forrest, to Frederick or the in-court identification made by Fraser. Furthermore, Frederick identified the defendant as the person holding the victim's purse when he arrived at the scene. Considering the reliability of these identifications, the admission of the out-of-court identifications made by Hazel and Webley was harmless, in any event.

[7] Even if we were to accept the defendant's assertion that the conduct of the police officer in this case amounted to state action, the one-on-one

## II

The defendant also claims that the state presented insufficient evidence of physical injury to the victim,

confrontation between the victim and the defendant was not unnecessarily suggestive.

Our Supreme Court has adopted "a two-pronged inquiry in determining whether identification procedures have violated a defendant's due process rights. First we address whether the identification procedure was unnecessarily suggestive. If so, the second question is whether the identification was nevertheless reliable based on an examination of the 'totality of the circumstances.' See *Manson* v. *Brathwaite*, 432 U.S. 98, 113–14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Ramsundar*, 204 Conn. 4, 10, 526 A.2d 1311 (1987); *State* v. *Miller*, 202 Conn. 463, 470, 522 A.2d 249 (1987); *State* v. *Theriault*, [supra, 182 Conn. 371–72]." *State* v. *Mitchell*, 204 Conn. 187, 201, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). It is well established that "where the admissibility of evidence depends upon a preliminary question of fact to be determined by the court, 'its decision is not to be reversed unless there is a clear and manifest error.' *Engelke* v. *Wheatley*, 148 Conn. 398, 410–11, 171 A.2d 402 (1961); see Practice Book § 4061; *State* v. *Brigandi*, 186 Conn. 521, 530, 442 A.2d 927 (1982)." *State* v. *Mitchell*, supra, 203. Any identification based on "one-on-one confrontation between the victim and the suspect police presented to him, has been deemed 'inherently and significantly suggestive' "; however, in some circumstances, they are not considered impermissible or unnecessary. Id., 201, quoting *State* v. *Middleton*, 170 Conn. 601, 608, 368 A.2d 66 (1976).

In *State* v. *Wooten*, 227 Conn. 677, 686, 631 A.2d 271 (1993), the defendant was seated in the rear of the police car when the sexual assault victim identified him as her assailant. Our Supreme Court agreed with the defendant that the identification procedure was suggestive. Id. The court found, however, that the confrontation, "although suggestive, was nonetheless not unnecessarily so, because 'the exigencies of the situation justified the procedure. . . .' *State* v. *Amarillo*, 198 Conn. 285, 293, 503 A.2d 146 (1986)." Id. The confrontation was not unnecessary because it provided "the victim with the opportunity to identify the assailant while her memory of the incident was still fresh." Id. Moreover, if the witness was able to exclude the suspect as the assailant, the police would then be able to eliminate quickly the innocent person as a suspect and to " 'continue their investigation with a minimum of delay.' " Id., 687. In this case, the confrontation took place immediately after the victim was robbed. The memories of the victim and her companion were fresh at the time they identified the defendant as the robber. The identification based on the one-on-one confrontation was not unnecessarily suggestive and the trial court did not err in denying the defendant's motion to suppress identification testimony of the victim and her companion.

Hazel, to support a conviction of assault in the third degree. We do not agree.

A person is guilty of assault in the third degree in violation of General Statutes § 53a-61 when he causes "physical injury" to the victim. General Statutes § 53a-3 (3) defines physical injury as "impairment of physical condition or pain . . . ." "In reviewing the sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield,* 228 Conn. 62, 76, 634 A.2d 879 (1993)." (Internal quotation marks omitted.) *State* v. *Sivri,* 231 Conn. 115, 126, 646 A.2d 169 (1994); see also *State* v. *Traficonda,* 223 Conn. 273, 278, 612 A.2d 45 (1992). The defendant argues that the discomfort in the chest suffered by the victim was the result of being frightened by the robbery and did not constitute "physical injury" as defined in § 53a-3 (3).

The trial court's jury instructions need not include a definition of " 'pain,' leaving the jury to apply the common usage of the word. See *State* v. *Grant,* 6 Conn. App. 24, 28–29, 502 A.2d 945 (1986)." *State* v. *Phillips,* 17 Conn. App. 391, 393, 552 A.2d 837 (1989). We do not require that the word "pain" be construed in a "hypertechnical manner." Id., 395. The victim testified that she suffered pain in her chest when the defendant grabbed her, hit her and then threatened her with a knife. The victim's companion also testified that the victim complained of pain in her chest after the robbery. Construing this evidence in the light most favorable to the state and drawing inferences from that evidence, we conclude that the jury reasonably could

have found beyond a reasonable doubt that the defendant's conduct caused "pain" and consequently "physical injury" to the victim.

## III

The defendant next claims that the evidence offered by the state was insufficient to support the conviction on the charge of attempt to escape from custody. We do not agree.

General Statutes § 53a-171 (a) provides: "A person is guilty of escape from custody if he escapes from custody." General Statutes § 53a-168 (2) defines "custody" as "restraint by a public servant pursuant to an arrest or court order." "In reviewing the sufficiency [of the evidence] claim, we apply a two-part test." (Internal quotation marks omitted.) *State* v. *Sivri,* supra, 231 Conn. 126.[8]

"Among the factors to be considered in deciding whether a person has been arrested are the nature of the offense under investigation, the nexus between the suspect's actions and the offense, the time and place of police intrusion, the degree of physical restraint imposed and the reasonable expectations of both the suspect and the arresting officers." *State* v. *Derrico,* 181 Conn. 151, 159, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); see *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *United States* v. *Grandi,* 424 F.2d 399, 401 (2d Cir. 1970); *Hicks* v. *United States,* 382 F.2d 158, 161 (D.C. Cir. 1967). " 'Precisely when an arrest occurs is a question of fact which depends on an evaluation of all the surrounding circumstances. *Sibron* v. *New York,* 392 U.S. 40, 67, 88 S. Ct. 1889, 20 L. Ed. 2d 917 [1968]; *Rios* v. *United States,* 364 U.S. 253, 261–62, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 [1960].' " *State* v. *Derrico,* supra, 158. Whether the officer made a formal declaration that the suspect was under arrest is

---

[8] See part II.

not dispositive of the issue. *State* v. *Januszewski*, 182 Conn. 142, 160, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); see *Dunaway* v. *New York*, 442 U.S. 200, 212, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *State* v. *Derrico*, supra, 160–61. " 'To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained.' " *United States* v. *Grandi*, supra, 401, quoting *Jenkins* v. *United States*, 161 F.2d 99, 101 (10th Cir. 1947).

The state presented compelling evidence during the trial from which the jury reasonably could have concluded that the defendant was in custody prior to his attempt to escape. Frederick arrived at the scene of the crime soon after the robbery occurred and saw the defendant involved in an altercation with two other men. Several witnesses, including the victim, identified the defendant as the robber. Moreover, the evidence shows that the defendant struggled with the police officer and refused to be handcuffed. He was restrained after he resisted the attempt of the police officer to place him inside the cruiser. Once the defendant was put into the cruiser, he was effectively confined and his right to move about freely in society was taken away. Moreover, Frederick told the defendant that he was being arrested. The jury reasonably could have inferred from this evidence that the officer believed that by putting the defendant into the cruiser he was placing the defendant under arrest. The jury also could have inferred from the defendant's refusal to enter the cruiser and his subsequent confinement that the defendant knew that he was being arrested.

The defendant challenges the state's assertion that he was informed of the arrest before his attempt to escape from custody. Frederick maintained unequivocally that he told the defendant that he was being

arrested when he put the defendant inside the police cruiser. Even though a formal declaration is not dispositive of the question of custody, the jury reasonably could have inferred from the officer's testimony that the defendant was informed that he was being arrested. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant,* 219 Conn. 596, 604, 594 A.2d 459 (1991). "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of witnesses and to gauge their credibility." *State* v. *Stepney,* supra, 191 Conn. 255. There was sufficient evidence to support the conviction of attempt to escape from custody.

## IV

The defendant next claims that he was denied a fair trial as a result of prosecutorial misconduct. The defendant asserts that the prosecutor did not have a good faith basis for charging him with assault in the third degree against Fraser, a charge of which he was acquitted by the jury. The defendant argues that this misconduct prejudiced his case because it allowed the jury to reach a compromise verdict by acquitting him of that charge, while finding him guilty of all other charges. We do not agree.

It is well established that it is "the prosecutor's duty to determine whether reasonable grounds exist to proceed with a criminal charge and that the prosecutor

has broad discretion in determining what crime or crimes to charge in any particular situation." *State* v. *Menzies*, 26 Conn. App. 674, 680–81, 603 A.2d 419 (1992); see *Wayte* v. *United States*, 470 U.S. 598, 607–608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985); *State* v. *O'Neill*, 200 Conn. 268, 279–80, 511 A.2d 321 (1986); *State* v. *McKenna*, 188 Conn. 671, 680, 453 A.2d 435 (1982). " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State* v. *Cosgrove*, 186 Conn. 476, 488–89, 442 A.2d 1320 (1982), quoting *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). We must decide, therefore, whether the conduct of the prosecutor, in charging the defendant with assault against Fraser, given the totality of the circumstances, was so damaging and prejudicial that it denied the defendant a fair trial.

The rationale for charging the defendant with assault against Fraser was firmly based in logic. The defendant was the "but for" cause of the injury to Fraser. If the defendant had not committed a robbery, Fraser would have had no reason to try to restrain him for the police. After the defendant hit him, Fraser injured his wrist when he struck the defendant. Fraser was attempting to stop the defendant from hitting him again. "It is unnecessary for 'proximate cause' purposes that the particular kind of harm that results from the defendant's act be intended by him. In many situations giving rise to criminal liability, the harm that results is unintended, yet is directly or indirectly caused by an act of the defendant. In such cases, where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible. See *People* v. *Kibbe*, 35 N.Y.2d 407, 321 N.E.2d 773 [1974], rev'd

on other grounds, 534 F.2d 493 [2d Cir. 1976], rev'd in part, 431 U.S. 145, 97 S. Ct. 1730, 52 L. Ed. 2d 203 [1977]." *State* v. *Spates,* 176 Conn. 227, 234–35, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 145 (1979).

The jury reasonably could have found that the injury sustained by Fraser was a foreseeable and natural result of the defendant's conduct. Even though Fraser sustained the injury when he struck the defendant, the jury could have found that the proximate cause of the injury was the robbery. Moreover, the defendant has failed to provide any evidence to show that he did not receive a fair trial. The trial court instructed the jury that it must consider each charge separately and the state must prove the defendant's guilt beyond a reasonable doubt as to any one charge. " 'It is essential to any orderly trial that the jury be presumed, in the absence of a fair indication to the contrary, to have followed the instruction of the court as to the law.' " *State* v. *Coleman,* 167 Conn. 260, 268, 355 A.2d 11 (1974), quoting *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312 (1972). In this case, the defendant has not demonstrated misconduct on the part of the prosecutor; moreover, he has not substantiated his claim that the jury reached a compromise verdict.[9]

## V

The defendant's final claim is that his attorney failed to investigate properly the charges brought against him prior to trial, thereby denying him effective assistance of counsel before he elected to proceed pro se. "This court has emphasized in other cases that a claim of

[9] In general, a defendant should file a motion to dismiss when the claim concerns prosecutorial misconduct based on the insufficiency of evidence to charge an offense. Practice Book § 815 (5); A. Spinella, Connecticut Criminal Procedure (1985), pp. 604–605; see *State* v. *Riggs,* 7 Conn. App. 180, 184, 508 A.2d 67, cert. denied, 200 Conn. 804, 510 A.2d 191, cert. denied, 479 U.S. 852, 107 S. Ct. 183, 93 L. Ed. 2d 118 (1986).

ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal." *State* v. *Mason*, 186 Conn. 574, 578–79, 442 A.2d 1335 (1982). Moreover, in *State* v. *Rivera*, 196 Conn. 567, 571 n.1, 494 A.2d 570 (1985), our Supreme Court stated that "[w]hen the claim of inadequate counsel is joined with other substantive and procedural claims of error, it is often difficult to make a judgment about the extent to which inadequate counsel has implicated the outcome of the criminal conviction. For that reason, it will ordinarily be necessary to await exhaustion of the direct appeal before the claim of ineffective assistance can be pursued on a petition for [a writ of] habeas corpus." A petition for a writ of habeas corpus, therefore, is the proper vehicle for this claim.

The judgment is affirmed.

In this opinion the other judges concurred.