STATE OF CONNECTICUT *v.* JAMES DOWNEY
(AC 22016)

Foti, Flynn and Daly, Js.

Argued February 15—officially released April 16, 2002

*David G. Toro*, with whom, on the brief, was *Norman A. Pattis*, for the appellant (defendant).

*Thomas M. DeLillo*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Deborah Mabbett*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, James Downey, appeals from the judgment of conviction, rendered after a jury trial, of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1),[1] interfering with an officer in violation of General Statutes § 53a-167a and breach of the peace in violation of General Statutes § 53a-181. The defendant claims that (1) there was insufficient evidence to support his conviction of assault of public safety personnel and (2) the court improperly refused to admit a defense exhibit as a full exhibit. We affirm the judgment of the trial court.

[1] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

General Statutes § 53a-3 (3) provides: " 'Physical injury' means impairment of physical condition or pain . . . ."

The jury reasonably could have found the following facts. On January 10, 2001, Officer Nate Stebbins of the East Hartford police department observed a station wagon perform a U-turn without using a signal on Main Street in East Hartford. Stebbins followed the vehicle for several blocks and initiated a motor vehicle stop. As Stebbins approached the vehicle to obtain the driver's license and registration, he observed an adult male in the front passenger seat. As Stebbins spoke with the driver, he noticed the odor of alcohol emanating from inside of the car. Stebbins returned to his cruiser, whereupon Officer Danielle Baumgardner arrived at the scene to provide backup. After reviewing the vehicle's registration, Baumgardner determined that the owner of the car was the defendant, a man whom she knew from a prior incident in which he had engaged her in a physical altercation. Baumgardner informed Stebbins that the defendant was aggressive and was known to carry weapons.

Both officers approached the car with Stebbins on the driver's side and Baumgardner on the passenger side. As Stebbins questioned the driver, the defendant began to swear at the officers. The defendant opened the front passenger door and exited the vehicle despite repeated orders from Baumgardner to remain in the car. The defendant was ordered to place his hands on the car so that the officers could pat him down to determine if he was carrying a weapon. The defendant complied with the order, but persisted in cursing at both officers. As Baumgardner moved behind the defendant to assist Stebbins, the defendant kicked Baumgardner in the left shin, causing her to stagger backward in pain. She regained her balance and approached the defendant, who continued to resist Stebbins' attempts to pat him down. The officers attempted to handcuff the defendant, but he would not let go of a luggage rack at the rear of his car. In the course of freeing his

hands from the rack, the defendant and the two officers tumbled to the ground. While on the ground, the defendant continued to resist efforts to handcuff him, so Baumgardner sprayed him with "cap-stun," an irritant designed temporarily to disable and distract a subject. The officers finally secured the defendant and took him into custody.

Following a jury trial, the defendant was found guilty of assaulting a peace officer, interfering with an officer and breach of the peace. This appeal followed.

I

The defendant first claims that there was insufficient evidence before the jury to permit it to find him guilty of assault of public safety personnel because Baumgardner suffered no physical injury as required by § 53a-167c (a) (1). We do not agree.

"In reviewing claims of insufficiency of the evidence, an appellate court employs a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt

is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Corbin*, 61 Conn. App. 496, 517–18, 765 A.2d 14, cert. granted on other grounds, 256 Conn. 910, 911, 772 A.2d 1124, 1125 (2001).

"To prove a violation of § 53a-167c (a) (1), the state must establish: (1) [I]ntent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer." (Internal quotation marks omitted.) *State* v. *Casanova*, 255 Conn. 581, 592, 767 A.2d 1189 (2001). In this case, the defendant challenges only the second prong, which requires the infliction of physical injury. The defendant claims that the brief episode of pain that Baumgardner experienced when the defendant kicked her does not satisfy the physical injury requirement as contemplated by the statute. Our decision in *State* v. *Henderson*, 37 Conn. App. 733, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995), is dispositive of this claim. In *Henderson*, during the course of an attempted robbery, the defendant pulled out a knife, grabbed the victim by the shirt and hit her. Id., 743. As a result of the defendant's actions, the victim experienced pain in her chest. Id. This court held that the pain that the victim experienced satisfied the definition of physical injury in General Statutes § 53a-3 (3). *State* v. *Henderson*, supra, 743–44.

In this case, Baumgardner testified that when the defendant kicked her she felt pain in her leg and stumbled backward as a result of the blow. We conclude, therefore, that the jury reasonably could have found beyond a reasonable doubt that the defendant's conduct caused pain and consequently physical injury to the officer.

## II

The defendant next claims that the court improperly refused to admit the defendant's medical records into evidence. We disagree.

During trial, the defendant sought to have an affidavit and three medical reports of his treating orthopedist, Grady Benson, admitted as full exhibits under the business records exception to the rule against hearsay. The defendant claimed that the reports tended to prove that he was physically incapable of kicking Baumgardner. The prosecutor objected on the basis of relevance, prejudice, hearsay and lack of foundation. The court sustained the prosecutor's objection.

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the [admissibility] of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 392, 788 A.2d 1221 (2002).

"General Statutes § 52-180[2] requires that evidence proffered under the business records exception to the

[2] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

hearsay rule satisfy three requirements: (1) that the record was made in the regular course of business; (2) that it was the regular course of the business to make the writing; and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. . . . The trial court is given discretion under General Statutes § 52-180 (a) to determine whether the criteria of the statute have been satisfied and, in reviewing the decision of the trial court to admit the evidence, an appellate court should construe the statute liberally." (Citation omitted; internal quotation marks omitted.) *State* v. *Hoffler*, 55 Conn. App. 210, 215–16, 738 A.2d 1145, cert. denied, 251 Conn. 923, 742 A.2d 360 (1999); see also Conn. Code Evid. § 8-4; 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 89e, pp. 800–806.

First, the defendant sought to admit an affidavit executed by Benson's record keeper, who represented in it that the medical reports met the business records exception to the rule against hearsay. The court found that the affidavit was not prepared in the regular course of business, but solely for the purpose of litigation and, therefore, was not admissible as a business record. Next, the court found that the three medical reports also did not qualify under the exception because the defendant failed to present any testimony that authenticated the reports as business records. Furthermore, the court found that they were not probative of the defendant's condition on the date of the incident and that any probative value of the reports was outweighed by the danger of confusion of the issue and the potential to mislead the jury with the presentation of unexplained medical testimony.

On the basis of our review of the record, we conclude that the court did not abuse its discretion when it refused to admit the evidence under the business records exception to the hearsay rule.

The judgment is affirmed.

In this opinion the other judges concurred.