## STATE OF CONNECTICUT *v.* DORIS J. JONES-RICHARDS
### (SC 17159)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued May 17—officially released September 14, 2004

*Robert Berke*, with whom, on the brief, was *Gregory A. Thompson*, for the appellant (defendant).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Vernon Oliver*, assistant state's attorney, for the appellee (state).

SULLIVAN, C. J. The defendant, Doris J. Jones-Richards, was convicted, following a guilty plea, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (2),[1] of executing an improper turn in violation of General Statutes § 14-242 (a)[2] and, after a trial to the court, of being a second offender in violation of § 14-227a (g).[3] She appeals from the judgment of conviction under § 14-227a (g). She claims on appeal that: (1) the trial court lacked jurisdiction to try her on charges of being a second offender after having sentenced her for the

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

[2] General Statutes § 14-242 (a) provides: "No person shall turn a vehicle at an intersection unless the vehicle is in a proper position on the highway as required by section 14-241, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in section 14-244."

[3] General Statutes § 14-227a (g) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (2) for conviction of a second violation within ten years after a prior conviction for the same offense, (A) be fined not less than one thousand dollars nor more than four thousand dollars, (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege suspended for three years or until the date of such person's twenty-first birthday, whichever is longer . . . . For purposes of the imposition of penalties for a second or third and subsequent offense pursuant to this subsection, a conviction under the provisions of subsection (a) of this section in effect on October 1, 1981, or as amended thereafter, a conviction under

underlying offense; (2) the trial court improperly vacated the defendant's sentence for the underlying offense before sentencing her as a second offender; and (3) there was insufficient evidence to prove beyond a reasonable doubt that the defendant was a second offender. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On August 15, 2002, shortly after 8 p.m., the defendant was driving her car on North Main Street in Southington and started to make a left turn onto Merrill Avenue. The driver of a second car attempted to pass the defendant's car on the right. At that point, the defendant decided not to turn onto Merrill Avenue, swerved to the right and struck the second car. Southington police officers were called to the scene. Upon speaking to the defendant, the officers noticed that she appeared to be intoxicated. She was not wearing shoes and was having difficulty standing. One officer detected the odor of alcohol on the defendant's breath. When he asked her what had happened, she replied, "too many margaritas." The defendant failed the horizontal gaze nystagmus test and refused to perform any other field sobriety test. She was placed under arrest and later submitted to two breath tests using an Intoxilyzer alcohol analyzer. The first test registered a blood alcohol level of 0.258 percent and the second test registered a level of 0.243 percent.

Thereafter, the defendant was charged in a two part information with, in part A, operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (2) and executing an improper turn

the provisions of either subdivision (1) or (2) of subsection (a) of this section, a conviction under the provisions of section 53a-56b or 53a-60d or a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section or section 53a-56b or 53a-60d, shall constitute a prior conviction for the same offense."

in violation of § 14-242 (a) and, in part B, with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (g). On June 3, 2003, the defendant pleaded guilty under the *Alford* doctrine[4] to the charges in part A of the information and pleaded not guilty to the charge in part B. The trial court accepted the pleas and, on the first count of operating a motor vehicle while under the influence of intoxicating liquor, sentenced the defendant to six months imprisonment, execution suspended after thirty days, with two years probation and a fine of $500. The court imposed a fine of $50 on the second count for the infraction of making an illegal turn. The court stayed execution of the sentence until June 17, 2003.

Immediately after the court had imposed the sentence on part A of the information, the defendant reiterated her plea of not guilty to the charge in part B of the information. After a short recess, the matter was tried to the court, which found the defendant guilty and sentenced her to two years imprisonment, execution suspended after 120 days, with two years probation and a fine of $1000. The sentence was to run concurrently with the sentence on part A, for a total effective sentence of two years imprisonment, execution suspended after 120 days, with two years probation and a fine of $1050. The court again stayed execution until June 17, 2003. Several hours after court had adjourned, the clerk of the court advised the parties by telephone that the court had ordered the parties to return to the court on June 16, 2003.

On June 6, 2003, the defendant filed a motion for judgment of acquittal, a motion to vacate the judgment and to dismiss part B of the information, and a motion

---

[4] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

in arrest of judgment. She argued in all three motions that the trial court did not have jurisdiction to try or sentence her separately under part B of the information because § 14-227a (g) is a sentence enhancement provision, rather than a substantive criminal offense.

On June 16, 2003, at the hearing ordered by the trial court, the state presented the court with a requested disposition asking the court to vacate the sentences that had been imposed under both part A and part B of the information and to resentence the defendant on part B. The state argued that the previous sentences had been "a mistake" and that the court could correct the sentence because it had not been executed. Defense counsel responded that he had not been notified of the state's position and argued that the sentencing error was not procedural, but substantive. The court vacated the sentences and resentenced the defendant on part B of the information to one year imprisonment, execution suspended after 120 days, with two years probation and a $1000 fine. The court also imposed a fine of $50 for the illegal turn infraction. In a notation at the bottom of the second page of the state's motion for requested disposition, dated August 11, 2003, the court stated that the revised judgment rendered moot the state's motion and the three motions filed by the defendant. It also indicated that it had "corrected the procedurally defective judgment" pursuant to Practice Book § 43-22[5] and relevant case law. The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

---

[5] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

I

The defendant first claims that the trial court did not have jurisdiction to try or sentence her on part B of the information after it had sentenced her on the underlying offense charged in part A. We disagree.

In *State* v. *Fullwood*, 194 Conn. 573, 575, 484 A.2d 435 (1984), the defendant was charged with robbery in the first degree and with being a persistent dangerous felony offender under General Statutes § 53a-40 (a). He pleaded guilty to the substantive offense of robbery in the first degree and, after a jury trial, was found guilty of being a persistent dangerous felony offender. On appeal, he argued that he did not "stand convicted" of the crime of robbery for purposes of § 53a-40 because a plea of guilty does not constitute a final judgment. Id., 586; see also *State* v. *Waterman*, 264 Conn. 484, 489 n.6, 825 A.2d 63 (2003) (imposition of sentence constitutes final judgment in criminal case). We concluded that although, ordinarily, "[t]o prove a conviction, it is necessary to show it by the record of a valid, subsisting final judgment"; (internal quotation marks omitted) *State* v. *Fullwood*, supra, 586; such a record in that case was "an impossibility, because, by the very nature of the two-part indictment combining a charge of a substantive crime in the first part with a charge of being a persistent dangerous felon in the second part, *no sentence can be imposed, nor judgment rendered, until both parts of the indictment have been adjudicated.* A person accused of being a persistent dangerous felony offender is not charged with a crime separate from the substantive crime which forms the first part of the indictment against him. . . . The only function of the separate judicial proceeding on the defendant's status as a persistent dangerous felon is to permit an enhanced sentence for conviction of the underlying substantive crime." (Citations omitted; emphasis added.) Id., 587. We concluded that, for purposes of § 53a-40,

"[j]udicial acceptance of a guilty plea suffices to establish the first element of the offense of being a persistent dangerous felon." Id.

In the present case, the state argues that, under *Fullwood*, the court's sentence on part A of the information was illegal. We agree. It was implicit in our analysis in *Fullwood* that the trial court is precluded from imposing a sentence on the first part of a two part information before adjudicating both parts of the information. See id.

The defendant argues, however, that under *Fullwood*, the court lost jurisdiction over part B of the information once it sentenced the defendant on the underlying offense and that it was improper for the court to correct this jurisdictional error by using Practice Book § 43-22 to vacate what she claims was a legal sentence. In support of this argument she cites the Appellate Court's statement that "[a]n illegal sentence is one that exceeds the maximum statutory limits, does not satisfy the mandatory minimum, violates double jeopardy rights, is ambiguous or is internally contradictory." *State* v. *Mollo*, 63 Conn. App. 487, 491, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001). Because the trial court's sentence on part A in the present case did none of these things, the defendant argues, it was not illegal. We are not persuaded.

The trial court has a clear duty under § 14-227a (g) to adjudicate the second part of a two part information in *all* cases in which such an information has been filed. The defendant has pointed to no principle of law, justice or fairness that supports her claim that the court, mistakenly or otherwise, may permanently relieve itself of that duty by imposing a sentence on the first part of the information, standing alone. "Although the principle is well established that penal statutes must be strictly construed, the application of common sense to the lan-

guage of a penal law is not to be excluded in a way which would involve absurdity or frustrate the evident design of the lawgiver." *State* v. *Pastet*, 169 Conn. 13, 21–22, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975). "Sentencing should not be a game in which a wrong move by the judge means immunity for the prisoner." (Internal quotation marks omitted.) *State* v. *Langley*, 156 Conn. 598, 602, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969); see also *Bozza* v. *United States*, 330 U.S. 160, 166, 67 S. Ct. 645, 91 L. Ed. 818 (1947) (United States Supreme Court "rejected the doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence" [internal quotation marks omitted]). Because the trial court has no authority to impose a sentence on the first part of a two part information without adjudicating the second part, such a sentence is illegal.

Accordingly, in the present case, we are compelled to conclude that the imposition of a sentence on part A of the information without an adjudication of part B was illegal. In light of this conclusion, the defendant's claim that the trial court had no jurisdiction to vacate and correct the sentence must fail. Practice Book § 43-22 plainly allows the correction of an illegal sentence at any time. In any event, regardless of whether the sentence was illegal, "[i]t is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because [in the absence of a legislative or constitutional grant of continuing jurisdiction] the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence." (Citations omitted.) *State* v. *Luzietti*, 230 Conn. 427, 431–32, 646 A.2d 85 (1994).

In the present case, the trial court sentenced the defendant on both parts of the information on June 3, 2003, but stayed the execution of the sentences until June 17, 2003, so that the defendant had not begun serving either sentence when the trial court vacated both of them and resentenced her on June 16, 2003. We therefore conclude that the trial court retained jurisdiction over the defendant when it vacated the sentences and resentenced her under part B.

## II

The defendant next claims that the evidence introduced at trial was insufficient to support the trial court's finding of guilt as to part B of the information, which charged her with having previously committed the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a. We disagree.

The following facts and procedural history are relevant to our resolution of this claim. The state filed two part B informations, alleging conflicting dates— December 6, 1999, and "on or about January 29, 1999"— for the defendant's previous conviction under § 14-227a. At trial, the state called as a witness Dawn Therriault, a Superior Court clerk for the judicial district of Bristol, geographical area seventeen. Therriault testified that the court files showed that the defendant had been convicted of operating a motor vehicle while under the influence of intoxicating liquor on January 26, 1999. She also testified that the court had ordered a stay of execution until January 29, 1999, which might explain the January 29, 1999 date in one of the part B informations.

The state also introduced five exhibits at trial, including the defendant's original misdemeanor summons, notice of rights and appearance bond, as well as a copy of the clerk's office information sheet for the defen-

dant's January 26, 1999 conviction for operating a motor vehicle while under the influence of intoxicating liquor, indicating a stay of execution until January 29, 1999, and a department of correction printout relating to her January 29, 1999 conviction for operating a motor vehicle while under the influence of intoxicating liquor. These documents revealed that the identifying information for the January, 1999 conviction—including the name, home address, date of birth, social security number, driver's license number, and owner of the vehicle driven at the time of the arrest—was identical to the identifying information in the present case.[6] The trial court concluded that there was sufficient evidence to conclude that the defendant previously had been convicted of violating § 14-227a. The court stated on the record that Therriault had explained satisfactorily the reason for the discrepancy between the date of conviction shown on the information and the date shown in the court records, that the information was sufficiently accurate and that there was no reason to believe that the defendant had been misled in any way.

The defendant claims that the existence of two separate part B informations, one of which indicated a prior conviction date of December 6, 1999, established a reasonable doubt that the defendant had been previously convicted as a matter of law. We are not persuaded.

As a preliminary matter, we set forth the standard of review. "Our standard of review of sufficiency of evidence claims is well settled. In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences

---

[6] The summons and complaint for the charges of operating a motor vehicle while under the influence of intoxicating liquor dated October 5, 1998, and August 15, 2002, were both issued against "Doris J. Jones-Richards, 118 Old Mill Road, Plantsville, Connecticut."

reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Jackson*, 257 Conn. 198, 204–205, 777 A.2d 591 (2001).

In *State* v. *Bothwell*, 78 Conn. App. 64, 826 A.2d 182, cert. denied, 266 Conn. 908, 832 A.2d 72 (2003), the Appellate Court considered a claim similar to that made by the defendant in the present case. Specifically, the defendant claimed that, because the state had introduced a court record indicating that the defendant had been convicted on December 17, 1996, there was insufficient evidence to establish beyond a reasonable doubt that he previously had been convicted under § 14-227a on January 9, 1997, as alleged in part B of the information. Id., 76. The court determined that, although the record indicated that the defendant had previously been convicted on December 17, 1996, the trial court had suspended the execution of the sentence until January 9, 1997. Id. Furthermore, the clerk of the court had testified that records of conviction were filed under both the case docket number and the disposition date. On the basis of this evidence, the trial court concluded that the date indicated in part B of the information put the defendant on notice of the charge at issue and rejected the defendant's claim that there was insufficient evidence to support the state's charge that he had been previously convicted on January 9, 1997. Cf. *State* v. *Gallichio*, 71 Conn. App. 179, 190, 800 A.2d 1261 (2002) ("although identical names are evidence that each name refers to the same person, standing alone,

it is not proof beyond a reasonable doubt that the defendant is the person who was convicted").

Construing the evidence in the light most favorable to sustaining the verdict and on the basis of the inferences reasonably drawn therefrom, we conclude that the trial court reasonably could have found that the cumulative force of the evidence established beyond a reasonable doubt that the defendant previously had been convicted of violating § 14-227a.[7] Even if construed in favor of the defendant, the evidence at the very most raised a doubt as to the date of the prior conviction, which is not a required element of the sentence enhancement provision, but did not raise any doubt as to the existence of a prior conviction. Accordingly, we reject this claim.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[7] We note that the defendant argues that a reasonable doubt exists as a matter of law as to whether she had been previously convicted under § 14-227a because the state never adequately established, and Therriault had no explanation for, the state's part B information alleging that the defendant had been previously convicted on December 6, 1999. In light of our conclusion that there was sufficient evidence for the trial court to conclude that, as alleged in the state's second part B information, the defendant had been previously convicted "on or about January 29, 1999," we need not consider this claim.