******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MITCHELL
HENDERSON
(AC 38381)

Keller, Prescott and Harper, Js.

*Argued January 9—officially released May 16, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Espinosa, J. [judgment]; Alexander, J. [motion
to correct illegal sentence].)

*Moira L. Buckley*, assigned counsel, for the appel-
lant (defendant).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *Anne F. Mahoney* and *Gail
P. Hardy*, state's attorneys, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Mitchell Henderson, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. The defendant was sentenced to a total effective term of forty-five years imprisonment, suspended after thirty-five years, with five years probation, following his conviction of robbery in the first degree, as enhanced for being a persistent dangerous felony offender, pursuant to General Statutes (Rev. to 1991) § 53a-40 (a),[1] and attempt to escape from custody, as enhanced for being a persistent serious felony offender, pursuant to § 53a-40 (b). On appeal, the defendant claims that the court improperly denied his motion to correct an illegal sentence because his classification as a persistent dangerous felony offender and a persistent serious felony offender, and his subsequent enhanced sentence violated the multiple punishment prohibition of the double jeopardy clause. Alternatively, he claims that punishment under both persistent offender provisions runs contrary to the legislature's intent. We affirm the judgment of the court.

In *State* v. *Henderson*, 37 Conn. App. 733, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995), this court set forth the following facts and procedural history underlying the defendant's criminal conviction: "On the afternoon of January 17, 1992, the victim, Victorene Hazel, and her companion, Codella Webley, crossed Baltimore Street in Hartford after leaving the Shawmut Bank. When the two women reached the corner of Baltimore Street and Homestead Avenue, they were approached by the defendant who demanded that Hazel hand over her purse to him. The defendant was standing in front of Hazel, at a distance of one and one-half to two feet. Her view of the defendant was clear and unobstructed. After Hazel refused to turn over her purse, the defendant pulled out a knife, grabbed her by the shirt and hit her. When he grabbed Hazel, who had a heart condition, she experienced pain in her chest. The defendant threatened to kill her if she did not give him the purse. When he swung the knife, she freed herself from his grasp and ran in the direction of the Shawmut Bank with the defendant chasing her. Hazel's purse fell off her shoulder as she was running and the defendant picked it up. Hazel entered the bank screaming that she had been robbed and needed help. When Webley reached the bank, she noticed that Hazel was breathing heavily, holding her chest and saying, 'My heart, my heart.'

"At approximately the same time, Howard Fraser and his cousin, Earl Forrest, were driving on Homestead Avenue when they stopped to look up a telephone number. As Forrest was looking for the number, Fraser noticed from a distance of five to seven yards the victim struggling with her assailant. As he and Forrest were about to drive off, he saw the defendant grab the purse

from Hazel. When the victim began to scream, Fraser realized that she was being robbed. Fraser watched the defendant run up Baltimore Street and enter onto private residential property. Fraser realized that the defendant would have to exit on Kent Street, the street parallel to Baltimore Street. Fraser and Forrest drove to Kent Street in anticipation of seeing the defendant. They saw him running down Kent Street toward Albany Avenue with a purse under one arm. Fraser opened the passenger door as they drove up next to the defendant. Forrest told the defendant that they were the police and ordered him not to move. Fraser then jumped out the passenger door and grabbed the defendant. When the defendant resisted, Forrest joined Fraser in an attempt to subdue the defendant. Both Fraser and Forrest repeatedly called for help as they were struggling with the defendant. The defendant struck Fraser during the struggle, and Fraser suffered a wrist injury from striking the defendant.

"Officer Douglas Frederick of the Hartford police department arrived approximately five minutes after the struggle had begun and saw the defendant holding the victim's purse. While the defendant was struggling with Forrest and Fraser, the victim's purse fell and its contents scattered onto the street. Frederick's attempt to handcuff the defendant was unsuccessful because he continued to resist fiercely. Frederick radioed for assistance and, finally, with the help of other police officers, managed to get the defendant into the police cruiser. Frederick then informed the defendant that he was under arrest.

"At trial, Fraser identified the defendant in court as the man he had caught running down Kent Street with the victim's purse and who had earlier robbed Hazel on Homestead Avenue.

"After Hazel and Webley left the bank, a man in a truck informed them that the robber had been apprehended on Kent Street. The man drove both women to Kent Street. After getting out of the truck, Hazel and Webley saw the defendant sitting in the police cruiser. Frederick had put the victim's purse on top of the cruiser for safekeeping while he was trying to restrain the defendant. Frederick noticed two women running down Kent Street toward his cruiser and he heard Hazel yelling, 'That's him, he robbed me.' Frederick asked both Hazel and Webley to make sure that the man in the cruiser was indeed the robber. Without any difficulty, both women positively identified the defendant as the robber. The weather was clear and there was adequate sunlight to enable the women to make the identification. Although Frederick was able to recover the purse, his search of the defendant did not produce a knife.

"After telling the defendant that he was under arrest and placing him in the police cruiser, Frederick trans-

ported him from the scene. The defendant yelled obscenities and threatened to kill the officer. As Frederick drove down Kent Street toward Albany Avenue, the defendant became increasingly violent. The defendant kicked out the rear window of the cruiser and attempted to climb out while the cruiser was in motion. The defendant was able to get his upper torso out of the rear window. Frederick stopped the car and radioed for assistance and an ambulance. Frederick then pulled the defendant out of the cruiser and sat on him until help arrived. When the ambulance arrived, the defendant was put in a body bag and transported to St. Francis Hospital. The defendant was treated for several cuts he had sustained while attempting to climb out of the rear window of the cruiser." Id., 736–39.

The defendant subsequently was charged and, following a jury trial, convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), and attempt to escape from custody in violation of General Statutes §§ 53a-171 and 53a-49. In addition to the substantive criminal offenses, the defendant was also charged in two part B informations as a persistent dangerous felony offender pursuant to § 53a-40 (a) regarding his conviction of robbery in the first degree and as a persistent serious felony offender pursuant to § 53a-40 (b) and (g) regarding his conviction of attempted escape. The defendant pleaded guilty to both persistent felony offender charges under the *Alford* doctrine.[2] On December 14, 1993, the court imposed an enhanced total effective sentence of forty-five years imprisonment, execution suspended after thirty-five years, and five years of probation. With respect to the defendant's conviction as a persistent dangerous felony offender, the court sentenced the defendant, pursuant to § 53a-40 (f), to twenty-five years imprisonment. With respect to the defendant's conviction as a persistent serious felony offender, the court sentenced the defendant, pursuant to § 53a-40 (g), to twenty years imprisonment, execution suspended after ten years, followed by five years of probation, consecutive to his robbery sentence. In 1995, this court affirmed the defendant's conviction on direct appeal. Id., 736.

On September 11, 2014, the defendant filed a motion to correct an illegal sentence. In support of his motion, the defendant claimed that his sentence was illegal because it violated the multiple punishment provision of the double jeopardy clause, and that his enhanced sentence runs contrary to the legislative intent of § 53a-40. The court denied the defendant's motion to correct an illegal sentence and issued a supporting memorandum of decision.

In its memorandum of decision, the court concluded that the defendant's classification as a persistent dangerous felony offender and a persistent serious felony offender pursuant to § 53a-40 (a) and (b), respectively,

and his subsequent enhanced sentence pursuant to § 53a-40 (f) and (g) did not violate the double jeopardy clause's prohibition against multiple punishments for the same offense, and that his conviction did not run contrary to the legislature's intent. With respect to the defendant's double jeopardy argument, the court reasoned that the defendant's two persistent felony offender sentence enhancements did not arise from the same transaction because the enhancements were not substantive criminal offenses, but simply a harsher penalty imposed for his conviction of robbery in the first degree and attempt to escape from custody. In rejecting the defendant's claim that his enhanced sentence runs contrary to the legislature's intent, the court observed that the plain language of the relevant persistent felony offender provisions did not support the defendant's claim that his classification as a persistent dangerous felony offender under § 53a-40 (a) precluded his classification as a persistent serious felony offender under § 53a-40 (b), or vice versa.

On appeal, the defendant claims that the court improperly denied his motion to correct an illegal sentence in two respects: (1) his sentence violates the double jeopardy clause's prohibition against multiple punishments for the same offense; and (2) his sentence runs contrary to the legislature's intent. We address each of these arguments in turn.

I

The defendant asserts that the court improperly denied his motion to correct an illegal sentence because his classifications, and resulting enhanced sentence, as both a persistent dangerous felony offender and a persistent serious felony offender, violate the double jeopardy clause's prohibition against multiple punishments for the same offense. Specifically, he argues that the two persistent felony offender classifications arose out of the same occurrences because they were both based on his prior felony convictions. Further, he contends that § 53a-40 (a) and (b) are the same offense under *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), because § 53a-40 (b) does not require proof of any fact that § 53a-40 (a) does not also require. In response, the state argues that the defendant misapplies the *Blockburger* test because it is the elements of the underlying substantive charges of which he was convicted that are relevant in determining whether a double jeopardy violation exists, rather than the elements of the persistent felony offender charges which serve as the bases of the enhancement requirements of the persistent felony offender provisions, and the charges against the defendant arose from separate transactions. We agree with the state.

As a preliminary matter, we review the trial court's authority to correct an illegal sentence. Our Supreme Court "has held that the jurisdiction of the sentencing

court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988); see also *State* v. *Mollo*, 63 Conn. App. 487, 490, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001); *State* v. *Tuszynski*, 23 Conn. App. 201, 206, 579 A.2d 1100 (1990). Practice Book § 43-22, which provides the trial court with such authority, provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. *State* v. *McNellis*, 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). We previously have noted that a defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to § 43-22 with the judicial authority, namely, the trial court. See *Copeland* v. *Warden*, 225 Conn. 46, 47 n.2, 621 A.2d 1311 (1993)." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 533–34, 902 A.2d 1058 (2006).

"Ordinarily, a claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard." Id., 534. In the present case, however, the defendant's double jeopardy claim presents a question of law, over which we exercise plenary review. See *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009); *State* v. *Tabone*, supra, 279 Conn. 534.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . . Although the Connecticut constitution does not include a double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution encompasses protection against double jeopardy. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . Traditionally we have applied the *Blockburger* test to determine whether two

statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States* [supra, 284 U.S. 304]. This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Bernacki*, 307 Conn. 1, 9, 52 A.3d 605 (2012), cert. denied,     U.S.    , 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013). However, "we are not limited to a review of the state's information in order to determine whether the defendant's crimes arose from the same act or transaction." *State* v. *Morales*, 164 Conn. App. 143, 152, 136 A.3d 278, cert. denied, 321 Conn. 916, 136 A.3d 1275 (2016). "[R]ather, we are permitted to look at the evidence presented at trial." Id.

A

We turn first to whether the charges of which the defendant was convicted arose out of the same act or transaction. The defendant argues that his classification as a persistent dangerous felony offender and as a persistent serious felony offender arose from the same circumstances because his same, prior felony conviction served as the basis for both classifications and the resulting enhanced sentence. Although it is true that the defendant's same, prior felony conviction gave rise to both of his persistent felony offender classifications, he is mistaken that his prior conviction is the relevant "act or transaction" under a double jeopardy analysis.

Our Supreme Court previously observed that "[a] person accused of being a persistent dangerous felony offender is not charged with a crime separate from the substantive crime which forms the first part of the indictment against him. . . . The only function of the separate judicial proceeding on the defendant's status as a persistent dangerous felon is to permit an enhanced sentence for conviction of the underlying substantive crime." (Internal quotation marks omitted.) *State* v. *Jones-Richards*, 271 Conn. 115, 121, 855 A.2d 979 (2004); see also *State* v. *Velasco*, 253 Conn. 210, 224, 751 A.2d 800 (2000) ("§ 53a-40 constitutes a sentence enhancement provision, and not an independent criminal offense"); cf. *Graham* v. *West Virginia*, 224 U.S. 616, 628, 32 S. Ct. 583, 56 L. Ed. 917 (1912) (recidivist information "is not an information of an offence . . . but of a fact, namely, that the prisoner has already been convicted of an offence" [internal quotation marks omitted]). In light of the foregoing, the proper inquiry in determining whether the defendant's charges arose under the same transaction or occurrence is to examine the underlying facts supporting the defendant's convic-

tion of robbery in the first degree and attempt to escape from custody. See *State* v. *Morales*, supra, 164 Conn. App. 152–53.

This court on direct appeal described two separate phases of the defendant's conduct that gave rise to his conviction. *State* v. *Henderson*, supra, 37 Conn. App. 736. With respect to the defendant's conviction of robbery in the first degree, this court noted that the defendant demanded that the victim hand over her purse, pulled out a knife, and retrieved the purse as the victim fled. Id. With respect to the defendant's conduct supporting his conviction of attempt to escape from custody, this court noted that following the robbery, the defendant took several steps in an effort to avoid arrest. Id., 737. In particular, the defendant initially resisted one police officer's attempt to restrain him, and his actions required the effort of several police officers to eventually arrest him. Id., 738. Further, the defendant, while restrained in the police car, kicked out the rear window and attempted to climb out. Id.

It is clear that the conviction of robbery in the first degree and attempt to escape from custody did not arise from the same act or transaction. The defendant's conduct relating to his conviction of robbery in the first degree is temporally and substantively distinct from his conduct relating to his conviction of attempt to escape from custody. Thus, the defendant has failed to prove that his charges arose from the same act or transaction.

B

Moreover, even if we were to conclude that the charges arose from the same act or transaction, the defendant's double jeopardy claim fails to satisfy the second prong of our inquiry because robbery in the first degree and attempt to escape from custody are not the same offenses.[3]

To satisfy the elements of robbery in the first degree pursuant to § 53a-134 (a) (3), the state was required to prove that the defendant committed the crime of robbery, as defined in General Statutes § 53a-133, and "use[d] or threaten[ed] the use of a dangerous instrument." General Statutes § 53a-134 (a) (3). "To prove that a defendant is guilty of robbery, the state must prove that the defendant had the specific intent to commit a larceny and that the larceny was committed through the use or threatened use of force. . . . [T]he intent element of robbery relates to the commission of the larceny and not to the use or threatened use of physical force. . . . Additionally, the specific intent required to prove an attempted robbery is no different from the specific intent required to commit a robbery, as [i]t is plain from a reading of General Statutes § 53a-49 (a) that the intent required for attempt liability is the intent required for the commission of the substantive crime." (Citations omitted; internal quotation marks

omitted.) *State* v. *Jordan*, 135 Conn. App. 635, 655–56, 42 A.3d 457 (2012), rev'd in part on other grounds, 314 Conn. 354, 102 A.3d 1 (2014). On the other hand, to satisfy the elements of attempt to escape from custody, the state was required to show that the accused was (1) in lawful custody, (2) charged with a felony, and (3) took a substantial step in a course of conduct planned to result in escape from such custody. See General Statutes §§ 53a-49 (a) (2) and 53a-171.

After review of the elements of the offenses of which the defendant was convicted, it is clear that his conviction of robbery in the first degree is a "conceptually separate and distinct offense"; *State* v. *Santiago*, 145 Conn. App. 374, 382, 74 A.3d 571, cert. denied, 310 Conn. 942, 79 A.3d 893 (2013); from his conviction of attempt to escape from custody. The offenses do not share any similar elements, and both require proof of facts that the other does not. See id., 382–84. Thus, the defendant's conviction cannot constitute the same offense under *Blockburger*.

Accordingly, we conclude that the defendant's felony offender classifications and the resulting enhanced sentences do not violate the double jeopardy clause's prohibition against multiple punishments for the same offense because the offenses of which the defendant was convicted did not arise out of the same act or transaction and do not constitute the same offense.

II

The defendant also claims that the court improperly denied his motion to correct an illegal sentence because our legislature did not intend to simultaneously punish an individual as both a persistent dangerous felony offender and as a persistent serious felony offender. The state contends the opposite. Specifically, the state argues that the plain language and the legislative history of the relevant persistent felony offender provisions do not limit the application of sentence enhancements to one offense when the defendant stands convicted of multiple qualifying offenses. We agree with the state.

The following legal principles guide our discussion. "When the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary. See *State* v. *Miranda*, 260 Conn. 93, 127, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); *State* v. *Snook*, [210 Conn. 244, 264, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989)] . . . *State* v. *Gonzales*, N.M. 337, 342, 940 P.2d 185 (App. 1997) (burden does not shift away from defendant once it is determined that defendant's claim fails *Blockburger* test)." (Citation omitted; footnote omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 12–13, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L.

Ed. 2d 140 (2009).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Tabone*, supra, 279 Conn. 534–35. "It also is well established that, [i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *State* v. *Victor O.*, 320 Conn. 239, 248, 128 A.3d 940 (2016).

We begin our analysis by first considering the text of the relevant persistent felony offender provisions. As we previously explained, the applicable provisions of the persistent felony offender statute, § 53a-40, provide in relevant part: "(a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the third degree with a firearm, *robbery in the first or second degree*, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder . . . .

"(b) A persistent serious felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsec-

tion (a) and the prior conviction was for a crime other than those enumerated in subsection (a) of this section. . . ." (Emphasis added.)

After review of the plain language of these provisions, it is clear that the language does not align with the defendant's argument that the legislature intended only one recidivist enhancement to apply to the conviction of multiple current charges. Instead, the relevant subsections permit a sentence enhancement as a persistent felony offender once certain conditions are met. Both of the substantive criminal charges of which the defendant was convicted satisfy those requirements, and nothing therein suggests that the conviction of only one of those charges is subject to an enhanced sentence.

It is important to remember that the defendant's sentence was enhanced as a persistent dangerous felony offender and as a serious felony offender on the basis of two distinct underlying criminal offenses. The defendant's conviction of robbery in the first degree and attempt to escape from custody independently satisfy the requirements of the relevant provisions, and the conviction on each charge was subject to an enhanced sentence. If, for instance, the defendant was convicted solely of robbery in the first degree, and the state sought to enhance that sentence under § 53a-40 (b), the defendant's argument may have merit. That particular subsection expressly precludes an enhancement of a sentence on a conviction of robbery in the first degree. Under the circumstances of the present case, however, the sentence on the defendant's conviction of robbery in the first degree was enhanced pursuant to § 53a-40 (a), and his sentence on the conviction of attempt to escape from custody was enhanced pursuant to § 53a-40 (b). Thus, the defendant's status as a persistent felony offender and the resulting sentence enhancements therefrom, does not run contrary to the plain language of the relevant persistent felony offender provisions.

Ordinarily, our analysis would end once "the meaning of [the relevant provision] is plain and unambiguous and does not yield absurd or unworkable results . . . ." (Internal quotation marks omitted.) *State* v. *Tabone*, supra, 279 Conn. 535. The defendant, however, expressly bases his argument—which is that the legislature intended for one recidivist enhancement to apply to only one conviction when the defendant stands convicted of multiple current charges—on (1) a comment regarding the interpretation of the persistent felony offender statute by the Commission to Revise the Criminal Statutes, and (2) our Supreme Court's holding in *State* v. *Ledbetter*, 240 Conn. 317, 692 A.2d 713 (1997). We address each in turn.

A

First, the defendant argues that the comment by the Commission to Revise the Criminal Statutes regarding

§ 53a-40 supports his argument. The commission's comment states in relevant part: "This section creates a new scheme of sentencing relating to recidivists. It singles out three types of recidivists for special treatment: (1) persistent dangerous felony offender; (2) persistent serious felony offender; and (3) persistent larceny offender.

"The purpose of the definition of persistent dangerous felony offender is to identify those persons who have shown themselves to be repeatedly physical dangerous to others. The essential elements of the definition of a persistent dangerous felony offender are: (1) a present conviction of the dangerous felonies listed in subsection (a) (1); and (2) at least one prior dangerous felony conviction and imprisonment therefor for more than one year. See prior section 54-121 for the comparable provisions. The consequence of being found to be a persistent dangerous felony offender is that the court may . . . impose a life sentence as for a class A felony. Whether to do so is a matter left to the discretion of the court.

"A persistent [serious] felony offender (as opposed to a persistent dangerous felony offender) is one who stands convicted of a felony and who has at least once before been convicted of a felony and imprisoned therefor for more than one year. The consequence of being found to be a persistent [serious] felony offender is that the court may, in its discretion, impose the sentence authorized for the next more serious degree of felony. Thus, a person convicted of a class C felony who has a prior felony conviction and imprisonment on his record may be sentenced as a class B felon. The purpose of the last section of subsection (b) is to make clear . . . that this escalation to the next higher degree does not apply where the present conviction is for one of the dangerous felonies listed in subsection (a) (1), since the authorized maximum sentences for those offenses are already high, and it would otherwise be possible to reach a life sentence under subsection (b) where the requirements of subsection (a) had not been met." Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-40 (West 2012), commission comment, p. 661.

The defendant takes issue with the final sentence of the commission's comment, which provides that "the last section of subsection (b) is to make clear, however, that this escalation to the next higher degree does not apply where the present conviction is for one of the dangerous felonies listed in subsection (a) (1), since the authorized maximum sentences for those offenses are already high, and it would otherwise be possible to reach a life sentence under subsection (b) where the requirements of subsection (a) had not been met." Id. The defendant argues that his conviction of robbery in the first degree, an offense listed in subsection (a) (1)

of § 53a-40, precludes a sentence enhancement under subsection (b) of § 53a-40. This argument is without merit.

The commission's comment simply clarifies that subsection (b) limits the sentence for certain enumerated offenses, those described in subsection (a) (1), from being enhanced under subsection (b) because those enumerated offenses already carry a harsh punishment. On the other hand, subsection (a) provides that the sentence for those serious offenses, excluded under subsection (b), are still subject to an enhancement under subsection (a). When these provisions are read together, it is clear that certain enumerated offenses may only be subject to an enhanced sentence under subsection (a), whereas the remaining offense may be subject to an enhanced sentence under subsection (b). In sum, the commission's comment clarifies that the enumerated offenses in subsection (a) (1) may be subject to an enhanced sentence only when the prior felony was similarly as serious.

The defendant's sentence was properly enhanced with respect to his conviction of robbery in the first degree because his conviction of prior felony charges was similarly as serious pursuant to subsection (a). Further, the defendant's sentence with respect to his conviction of attempt to escape from custody was properly enhanced under subsection (b) because that offense was not enumerated in subsection (a) (1), and the remaining conditions were satisfied. In sum, the commission's comment does not support the defendant's argument that the legislature intended to enhance one present conviction only when the defendant stands convicted of multiple current charges.

B

Second, the defendant contends that the underlying reasoning and policy considerations in our Supreme Court's decision in *State* v. *Ledbetter*, supra, 240 Conn. 327, should be extrapolated to the present case. Specifically, the defendant argues that our Supreme Court's decision in *Ledbetter* suggests that the legislature did not intend for more than one recidivist enhancement to apply to the conviction of multiple current charges because he was not afforded the opportunity to reform. We disagree with the defendant for several reasons.

The primary issue our Supreme Court considered in *Ledbetter* was whether § 53a-40 (d)[4] "applies to a defendant who, prior to the commission of a third felony, entered simultaneous guilty pleas to two separate felonies." Id., 319. Our Supreme Court held that § 53a-40 (d) "precludes the use of two felony convictions rendered simultaneously as the basis for a conviction as a persistent felony offender." Id., 328.

After reviewing the plain language of the statute, and the relevant legislative history, our Supreme Court con-

cluded that § 53a-40 (d) is part of a "statutory scheme that defines, and provides sentencing guidelines for, the habitual offender categories recognized in Connecticut"; id., 332–33; and that "the words of this statute, together with its legislative history, make clear that the legislature intended this section to apply only to those repeat offenders who, despite having been given the opportunity to reform, not once but twice, nevertheless persist in a career of crime." Id., 339. Our Supreme Court relied on the notion of "sequentiality"; id.; meaning that before the persistent offender provisions applied, the scheme requires "a strict sequence of offense, conviction [and] punishment for each prior felony conviction." Id., 339–40. In support of its conclusion, our Supreme Court reasoned that the simultaneous conviction of two offenses, which otherwise qualify under the persistent felony offender provisions, would not afford the accused the opportunity to reform his conduct. Id., 339. Thus, a sentence enhancement as a persistent felony offender without a conviction of two separate charges runs contrary to the legislature's intent behind § 53a-40 (d). Id., 328.

The most obvious reason why our Supreme Court's decision in *Ledbetter* is inapposite to the present case is that an entirely separate subsection of § 53a-40 was at issue, subsection (d). Unlike the situation in *Ledbetter*, the provisions at issue before us, § 53a-40 (a) and (b), subsection (d) contains distinct language indicating that the accused must "at separate times prior to the commission of the present felony, [have] been twice convicted of a felony other than a class D felony." General Statutes § 53a-40 (d). Our Supreme Court observed that this language, in conjunction with the legislative history, indicates that the present felony, that is, the felony subject to enhancement, cannot be construed as "separate" from the commission of the present felony under § 53a-40 (d) (2). *State* v. *Ledbetter*, supra, 240 Conn. 339–40. In the present case, the underlying policy consideration, which is that the defendant's conviction of the charges be in sequence, is not an issue.

The basis for the defendant's persistent felony offender sentence enhancements was not his present conviction of robbery in the first degree and attempt to escape from custody, but his prior felony convictions. Unlike the situation in *Ledbetter*, the sequence of the defendant's convictions is not an issue because the defendant, prior to the present case, had been convicted of and imprisoned for several other felony offenses. Those prior felony convictions gave rise to his classification as a persistent felony offender, which, in turn, enhanced the sentences on his more recent conviction of robbery in the first degree and attempt to escape from custody. The state in *Ledbetter* attempted to rely on the defendant's conviction of multiple current charges as the basis for a sentence enhancement as a persistent felony offender and sought to enhance his

sentence on the conviction of those offenses. Thus, the sequence of the defendant's offenses in *Ledbetter* was problematic because he was not charged, convicted, and sentenced at a prior time. That issue simply is not present here on the basis of the defendant's history of felony convictions.

The specific persistent felony offender provisions at issue here each required that the defendant be convicted once prior to his conviction of the current charges. Specifically, subsection (a) of § 53a-40 provides in relevant part that the enhancement provision may apply when the defendant "has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution" for certain crimes. General Statutes § 53a-40 (a). Section 53a-40 (b) provides in relevant part that the enhancement provision may apply when the defendant "has been, prior to the commission of the present felony, convicted of and imprisoned, under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. . . ." Thus, subsections (a) and (b) are clearly distinct from subsection (d), which requires two predicate convictions.

Furthermore, another underlying policy consideration noted in *Ledbetter*, which is that the legislature intended to punish recidivists under § 53a-40 (d) who had two opportunities to reform their conduct, but nevertheless pursued a career of crime, is adhered to in the case before us. It is clear from the record that the defendant had ample opportunity to reform his criminal conduct, as he had several felony convictions prior to the most recent conviction of robbery in the first degree and attempt to escape from custody. Had the defendant in *Ledbetter* been convicted as a persistent felony offender, on the basis of multiple current charges, he would have been denied that opportunity. In the present case, the defendant clearly had that opportunity to reform, but did not. Accordingly, we conclude that the court did not improperly deny the motion to correct an illegal sentence on these grounds.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 1991) § 53a-40 provides in relevant part: "(a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder . . . .

"(b) A persistent serious felony offender is a person who (1) stands

convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) and the prior conviction was for a crime other than those enumerated in subsection (a). . . .

"(f) When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35a for the crime of which such person presently stands convicted . . . may impose the sentence of imprisonment authorized by said section for a class A felony.

"(g) When any person has been found to be a persistent serious felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35a for the crime of which such person presently stands convicted . . . may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony. . . ."

Hereinafter, all references to § 53a-40 are to the 1991 revision of the statute unless otherwise noted.

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] As we noted in part I A of this opinion, the relevant inquiry in a double jeopardy claim involves examination of the substantive criminal offenses, i.e., robbery and attempted escape, not the persistent felony offender enhancement provisions.

[4] General Statutes (Rev. to 1991) § 53a-40 (d) provides in relevant part: "A persistent felony offender is a person who (1) stands convicted of a felony other than a class D felony; and (2) has, at separate times prior to the commission of the present felony, been twice convicted of a felony other than a class D felony."